v.   going to affect is the context of all of the evidence. I mean, if you have somebody who's done 100 things wrong, but you also learned that there was an $800 payment or 22 phone calls, I don't think it matters that that's the only evidence of undisclosed phone calls. It has to be the impact of the 22 phone calls, the $800 and the $3,000. Right? Yes. And getting back to one of Judge Winn's concerns, uh, characterizing the, uh, the various witnesses that testified, not only did Judge Patterson at trial refer to, uh, Mr. Merrill as, as the key, a key witness, the state said the same thing. Uh, and, and those are to be found at, uh, replacement brief ERs 27 and replacement, uh, brief ER 47 where the state, the 47 where the state characterized Merrill as one of the most important witnesses in this case. Well, the state, the state might have in its brief characterized Merrill like that, but as I read the state's closing argument in the trial, they tried to stay away from Merrill as much as possible. Well, it can't be both ways judge with respect and to get back to the other issue of whether, uh, a qualitatively different type of, of suppressed Brady evidence, um, makes a I refer you to Bagley, which is clearly established federal law that applies to this case. What in that case, can I, can I back up a little bit? Cause we apply to this case Bagley came out after, uh, the Arizona Supreme court, uh, issued its final decision in June of 1985. So why is it the Bagley would be clearly established law here? Well, uh, for two reasons, three reasons. One, uh, Cooper was not final until January 12th, 1986, which was explicitly acknowledged by the district court in its order and conceded by the state in its brief. So, well, I agree with that and I'll ask the state the same question, but it seems to me that, um, uh, you know, what the concession by the state doesn't waive that issue for us. And I, I had always understood clearly established law had to be based upon the final decision from the Arizona Supreme court on the question, not the, the, the finality. And that may have changed after the district court made that, uh, made that ruling that you're referencing back in 2008. So, uh, anyway, I, I mean, let's set Bagley aside, go ahead with your argument, assuming Bagley does apply. Okay. Assuming Bagley does apply the question before that court was a fairly de minimis, uh, uh, a couple of fairly de minimis payments to centrally important witnesses in that case, which was suppressed and, uh, Bagley court said the payment of money didn't say this. This isn't the, in my words, the payment of money is different in kind because it gives the witness a direct personal stake in respondents conviction. The typical incentives that a state is expected to give cooperating witnesses is immunity and leniency. And those were the things that Mr. Merrill enjoyed in spades. He was a central, but, but, but wasn't Mr. Merrill, I mean, wasn't it brought out that this deal allowed Mr. Merrill to himself avoid, um, the death penalty. Yes, sir. And, and, and how does 22 phone calls and a few thousand dollars, um, materially increased the likelihood that he's lying when the defense council pointed out, um, repeatedly that he was cutting this sweetheart deal to himself avoid the death penalty. Well, I think the lies is fairly clear, at least from my reading of it, your honor, that the failure of even an enormous bundle of impede suppressed impeaching or expulsory Brady evidence, uh, uh, successfully gotten into the trial does not prove that additional, uh, uh, evidence might not have made a difference, particularly in this case. I think what you just said kind of brings me back to what the definition of materiality is in the standard, because the way you phrased it was couldn't have made a difference. And I think, you know, I might be more inclined to agree with you if that were the standard, but it seems to me that what we're looking at is this has to be material. If, uh, if there's a reasonable likelihood that the false testimony could affect the jury, uh, I think is the standard, but now that, but I guess that's a question for you is where, you know, what are you perceiving the standard to be? Cause it can't be that there's just a possibility that it would affect it. I respectfully disagree with your articulation of, of materiality. Uh, the definition of materiality is whether in its absence, that is the evidence, uh, the defendant received a fair trial understood as a trial resulting in a verdict worthy of confidence. Now, instructive, uh, and possibly determinative is this evidence was discovered by counsel, a codefendant. When it came to the attention of Lucas trial judge, uh, he was quite outraged. Not only did he grant the motion for new trial based upon this suppressed evidence, but he, uh, instituted contempt proceedings against Brownlee Jones and Ryan. And after retrial, when the second trial, this is Lucas, it was acquitted. So that is, that is some evidence that it was material juries and ours was probably a closer case than hers. It, I don't know. I don't know how long her jury was out, but ours was a close, was, was a close, close case. So a little bit, you know, I do agree with you that I think monetary benefits, uh, you know, as a motivating factor for a particular witness is qualitatively different than other types of benefit. So, so, you know, I'll give you that, but every case sort of rise or falls on its own set of facts. And here you've got, you know, a few thousand dollars in change and financial benefit kind of paid against immunity, which avoids for Mr. Merrill, um, the death penalty possibly, and then a whole host of other impeaching evidence against him as well. You know, so, you know, how do you weigh that in terms of the material, materiality standard, even assuming that Bagley applies, I think it's a much closer case. And that's why I started questioning you with regard to the findings by the Arizona Supreme Court, because there's a clear finding by the Arizona Supreme Court that the key witness really is not Mr. Merrill. He's, he may be an important witness, but again, the Arizona Supreme Court characterized his testimony as merely corroborative. And I'm looking at the, um, Arizona Supreme Court's discussion. It said the undisclosed information impeaching him and Dan Ryan had no effect on the key testimony of Marilyn Redmond. So in light, and it even talked about other cases where the witness is a key witness, maybe the only witness who can place the defendant at the scene or who can tie the defendant to the crime, I think that might be a different case. We can debate whether AEDPA reviews would cause you to lose that case as well, but that's a much closer case. And here we've got a case where yes, you've got a qualitative, uh, undisclosed information that should have been presented to the jury. You weigh that against a lot of other impeaching evidence, but you also have to consider the context of the case where a witness was really characterized by Arizona Supreme Court as being merely corroborative. And I don't know how you get past that particular point. Well, the Arizona Supreme Court's perception of the centrality of Ms. Redmond may or may not have been, uh, determinative for the jury. That's an impossible thing to know. But what we do know is that Ms. Redmond's description of the intruders was wildly variable over time. It began with three blacks and then two blacks and a white. The intruders were masked. But the jury heard all of that. So, so, um, am I understanding your argument correctly that in order for you to prevail in light of our discussion, we would have to find that the Arizona Supreme Court's, uh, factual determination of Marilyn Redmond as a key witness, the pivotal witness, we would have to find that that factual finding was unreasonable for you to prevail? No, what I would say is their reliance on Marilyn Redmond's testimony is an outcome determinative test, which violates the main materiality standard. But, but counsel, but counsel, it's not an outcome determinative test. I mean, the Arizona Supreme Court, um, in the same sentence that, uh, Judge Nguyen was reading said, unlike State v. Lukaszek, Meryl's testimony in the instant case was merely corroborative and not pivotal. And the undisclosed information impeaching him had no effect on Redmond. And finally, unlike Lukaszek, um, there are a significant amount of, uh, of other testimony, um, linking your client to the, to the crime. So how, how can you win without as Judge Nguyen posited our finding that the Arizona Supreme Court's factual determination under AEDPA was quote unquote unreasonable? Well, the determination that it was cumulative is actually unsupported by the record. Uh, first because it's different in kind and the case law distinguishes evidence that is different in kind from that which is cumulative. That's Bagley that you're pointing to. No, there are many subsequent cases and there's... But what about proceeding cases prior to that? Oh, I think that, uh, uh, NAPU versus Illinois, which is a 1959 case, we did not believe that the jury was appraised of other grounds for believing that the witness may have an interest in testifying against the petitioner turned what was an otherwise tainted trial into a fair one. So it's making a distinction between the kind of evidence and whether it's qualitatively different and whether that qualitatively different evidence was suppressed. So can you, um, I think Judge Bennett had asked this question before, you're talking about, you know, death penalty, potential death sentence, murder conviction being taken off the table for Merrill. Are any of those cases dealing with that situation? Because I think your argument would have more force if this were money, you know, in addition to, hey, immunity for some minor role in a separate offense. But when you're talking about a role in murder, where at least two of the other conspirators received the death penalty and it was definitely on the table, your argument seems to have less force. So how do you address? Well, I would, I would submit that Brady is Brady regardless of the seriousness of the offense. And it has to be applied. My question is you're saying it's qualitatively different. Yes. It might be qualitatively different as to some minor immunity. But how is a few thousand dollars qualitatively from having a potential death penalty and murder conviction taken off the table? Well, as Bagley says, and as other cases have said, and I'm sorry I don't have the sites, juries look with heightened suspicion and witnesses who are paid for their testimony. It's a different and more tawdry incentive. It's purchased testimony, which is attempted by a defense lawyer in a criminal case. But does any of that deal with a case where you have there can't be that many cases out there where death penalty was also taken off the table to a potential witness and they're addressing. And that's I think that's the difference. Bagley wasn't that that kind of a case. Well, Lukacic certainly was. It was the death case that had gone to. But you're using that as an example for us. And and and in contradistinction to what the judge did in the Hooper case, the judge in Luke is a case granted the new trial held. Prosecutor and investigator in contempt. And when the new evidence was presented to that second trial, she was acquitted. So one can infer, I think reasonably that this this was important. Juries look with great suspicion on paid witnesses and expect as a matter of course. Counsel, even even on the legal theme that you're positing wasn't Merrill, quote, unquote, paid for his testimony because he was placed in a more relaxed prison cell because he was allowed to come back to Arizona by himself, even though he had a murder warrant out for him. He was allowed to taken out of jail to have sex with his wife. These things came out. Isn't that essentially being paid for his testimony? No, I respectfully disagree. Those are benefits. Those are leniency and other benefits. But it's not the exchange of money. And and the fact that it was the fact that it was suppressed throughout the trial gives you gives you a view of what Brownlee, Jones and Ryan thought about its potential explosive. Character, not only was there three thousand dollars paid to Mrs. Merrill and several hundred dollars paid so her car didn't go into repossession and twenty two long distance calls, but the hotel rooms in which Mr. And Mrs. Merrill had sex was also picked up by the county. So not to cut you off, but is this of the three Brady? Do you agree that there's basically three Brady issues, the benefits to Merrill and then the photos and the police reports? Yes, sir. The Brady issues we're dealing. Yes, sir. Is it is the Merrill evidence the strongest of your three Brady issues? I would say probably without without diminishing the neutrality of the evidence, which gets us into a discussion of the timeliness of disclosure for purposes of allowing the defense a fair opportunity to structure its case from the outset. I'm on the on the photos and the police. Yes. Yes. So to me, those those all come down to one question. And maybe you can address this. What would they have done differently? What would the defense have done differently? Had they had that evidence earlier? Well, because it seems like everything ultimately was presented or could have been presented. Yes. Well, I refer the court to a model versus Gonzalez, which is a recent Ninth Circuit case, which asked the question. Didn't the defense have a responsibility once it got an inkling of the suppressed evidence to make heroic investigative efforts such that it could it could deal with and counter the late disclosed and surprising evidence? And the court unequivocally said there is no duty on defense to do that because Brady puts an affirmative duty on on the state to disclose. Now, but respectfully, counsel, I'm sure they did get it during trial. Yeah. And it's only even arguably a Brady violation if there was something about the late disclosure that prevented them from using it effectively since they actually did get it. There's no case that I know of that says Brady absolutely requires pretrial disclosure. And certainly not when this was before the Arizona Supreme Court. No, but the law is clear that the disclosure has to be made at a time when it can be of value. Yes. The reason I mean, they were able to use it. And that's why my question is, what would they have done different had they had it two months before or a month before trial? Well, in in Mr. Woods motion for this trial, he wrote quite clearly what he would have done had he had the and I read that but it's it's difficult to know in retrospect because it requires requires us to speculate about things that didn't happen but could have happened. Right. Now you're on appeal saying that you were hurt by the late disclosure. Yes. So I think you've got to be able to answer the question of where's the lost value? OK. Which goes to Judge Nelson's question of, OK, you got it late. How did it change the picture? What would you have done differently? And there's got to be an answer for that, I think, as to the photographs and the police report for you to even begin to climb uphill on as to those two issues. Well, there is an answer and it's a good one. These are the things that would have changed. Jury vore dire utilizing the fact of and the descriptions and photographs of three alternative suspects, jury selection, opening statement, cross-examination of the police who said to a man, I believe, that the reason the three suspects weren't apprehended was because at the time of their apprehension, it was impossible for them to have committed the crime. All of those police officers would have been found to be not telling the truth. So although it's difficult to reconstruct. I mean, the part of the problem, I mean, the first two examples you gave, it the problem is if we adopted that, you'd basically be setting up a rule that Brady, you know, requires pretrial disclosure because anyone could say the same thing about. Well, is there something specific about voyeur dire or opening argument that would have changed? What would this have done? What give me an example of a question that would have been asked on voyeur dire that wasn't asked because you didn't know about this? Well, whatever the question would be, and I don't know, it would have put in the minds of the jurors the fact that there were three alternate suspects who arguably matched the suspects in custody and the police would have actually changed the jury composition. It may have. It may have. Counsel, didn't what didn't the prosecutor show the photos to Mrs. Redmond and didn't Mrs. Redmond testify these weren't the husband and her mother? That's not in the record that I read, Your Honor. I'm at three minutes. You're at three minutes. We are questioning has taken you essentially exclusively in the Brady land and you didn't get to address any of the other issues. Why don't you go ahead and use the remaining time addressing whatever other issues you want to and I'll add three minutes on the clock for a little. OK. First, is there another issue that is compelling in your view? I think all three are, Your Honor. OK, well, tell me about the Eighth Amendment and the Fourteenth Amendment. Yes. Ultimately, I mean, there's some questions about whether the district court did everything properly, you know, should have allowed you to amend to add the Eighth Amendment claim. But to me, the question comes down to, do you have an Eighth Amendment claim? Yes. Does your client have an Eighth Amendment claim and does he have a due process claim? And I'd like to know what your strongest on the merits for that. Well, when the when the balance of aggravators and mitigators is materially altered, as it was in this case, by the by the vacature of the two weightiest aggravating circumstances used to impose death in this case. The question that I raised was, does that affect the validity of the death sentence? And on PCR, my fourth or fourth PCR, the PCR court simply engaged in what is called a proscribed automatic affirmance, finding that death was required regardless, which contravenes Johnson versus Mississippi. It contravenes Clemens versus Mississippi. And the Fourteenth Amendment claim that I've I've I've tried to raise and hammer as well as I could was not responded to by the respondents. And was not addressed by the district court. The argument is this. There is a it's it's during that era when aggravating circumstances were now being viewed as elements of greater offense. Therefore, Justice Scalia, when he was examining the case, said that aggravating circumstances as elements of the case, if they're improperly before the court or before the jury, there is a Fourteenth Amendment due process violation unless one of the other aggravators provides all the facts and circumstances necessary to support that aggravator, which was improperly before the jury. What I've argued multiple times is that these two Illinois prior murder convictions and death sentences were the most powerful aggravating circumstances that there was. It's all that was talked about. And. Excuse me. I've lost I've lost my train of thought. This is on your due process claim. Yes. Thank you. If it if it can be found that no other aggravating circumstance supplies the facts and evidence necessary to support these two, then we have a fundamental Fourteenth Amendment due process violation. My argument is this reweighing and harmless error analysis are Eighth Amendment violation techniques or Eighth Amendment violation techniques. They're designed to guarantee that the sentence does not offend  A Fourteenth Amendment due process violation, which we have here in spades. Our position is cannot be cured by harmless error or reweigh. And the reason that Sanders case broke broke as it did was because Justice Scalia found that the evidence supporting the the aggravator that was found to be flawed was was clearly to be found in the other aggravators that could stand and stood. So what he did is he concluded there simply was no constitutional violation at all. It wasn't called upon. Thank you, counsel. You're actually over time. So let's get to the case. And then when you come back up, I'll put three minutes on the clock for your rebuttal. Thank you very kindly. Good afternoon, your honors. May it please the court. Jeff Sparks with the Arizona Attorney General's Office on behalf of the respondents appellees. I'll start with the Brady claim as well. And the actually, if you don't mind, counsel, can I have you start with the Eighth Amendment claim? Sure, sure. So as far as the Eighth Amendment claim, what the state court did here was a permissible reweighing of the remaining aggravating factors against any existing mitigating mitigating circumstances, as as the Supreme Court had stated is proper. When a sentence was based on later invalidated aggravating factors in cases like Stringer v. Black, which is the clearly established federal law applicable to this claim. So, counsel, is it is it your view that the reweighing that was required is satisfied by the PCR court saying there were no mitigating factors here, the Arizona Supreme Court found there were no mitigating factors here. So the absence of one aggravator makes no difference because there had to have been a death penalty anyway. And is because it strikes me that's what they did. And is it your view that as a matter of law, that's enough? It is, and that's correct as a matter of law, because of the specific factual circumstances of this case. What happened here was not an automatic affirmance of the sentence, as Hoover was arguing. It was an application of Arizona's sentencing statute, which, you know, at this time, the Supreme Court had addressed and said it is not impermissibly mandatory. And the court looked at the remaining aggravating factors, which are strong. There is the especially heinous cruelly depraved, the pecuniary gain, which was proven by a murder for hire in this case, and then reweighing those remaining circumstances against the existing mitigation and the record. And it just so happened that in this case, both the original sentencing court and the Arizona Supreme Court in its independent review on direct appeal had found that Hoover had failed to prove the existence of any mitigating circumstances. But applying those facts to Arizona law, the state PCR court permissively concluded that a death sentence was still appropriate in conducting that reweighing. Although it's a strange kind of procedural circumstance where the convictions hadn't yet been overturned. It is a bit strange. I don't think that there is anything prohibiting that under Supreme Court case law, being that this claim, assuming amendment would have been allowed into the habeas petition, would have been proceeding under AEDPA. I'm not aware of any clearly established federal law that prohibits a state court from prospectively or proactively addressing a claim in that way. Can I ask, so is your argument based on the fact that no mitigating evidence was presented? That's why this stands, meaning if there had been mitigating evidence presented, would there need to be a reweighing based on the two aggravating factors falling out later? No, our position is not based on the fact that no mitigating circumstances were found originally or mitigation evidence presented. I think even if mitigation evidence had been presented, the state court still would have been required to go through a reweighing process like it did. So counsel, I'd also like to, and whenever you feel inappropriate, even though counsel didn't discuss this, I'd like to understand the state's position on trial counsel, Mr. Wood, conducted very little, if any, investigation into mitigators. He explained why he did it, but how can it not be deficient performance? Put aside for the moment prejudice, but how could it not be deficient performance for Mr. Wood to have basically a commissioned no investigation into possible mitigators? Well, that goes back to Strickland itself, I think, which was also a case where a defense counsel essentially did not just elected not to investigate potential mitigation. And the court said in that case that that decision itself is reviewed for reasonableness under the circumstances with a heavy measure of deference to counsel's judgments. The Supreme Court has addressed that principle in later cases. For example, Pinholster where it's in, there is no constitutional duty to investigate and it's not per se an effectiveness not to investigate mitigation. That's something that as any decision by counsel is always reviewed for reasonableness under all of the circumstances. So why was it reasonable here? I mean, there's no cost to having an investigator review something. The worst that can happen is you're not gonna use it. So why would it be, why was it reasonable here not to have an investigation? It was reasonable here because as Mr. Woods stated, he looked at the case, he was familiar with his client, the defendant, he referenced when he was explaining his reasoning. His client was 35 years old at the time. He was a hired contract killer who flew to Arizona simply for the purpose of carrying out the crimes in this case. He viewed him as an intelligent person. And we don't have much information about what he, if anything, he did look into. We do know that he had traveled to Chicago where Cooper was from several times in his investigation of the case in general. And looking at those circumstances, he concluded that any mitigation he would have been able to find and present wouldn't have made any difference with the sentencing judge. And he concluded that what he thought was a better tactic as far as improving the chances of obtaining a life sentence for his client was to essentially make an argument with the judge rather than present mitigation that he thought would be wholly ineffective. But it was an argument that had no basis at all in Arizona law. I would not, I don't think that's necessarily true. And that's because under cases like Eddings, a sentencer has to be able to consider anything in the record as potentially mitigating that could involve the circumstances of the crime, anything that's presented in the guilt portion of the trial. So just because defense counsel does not present mitigation evidence at the sentencing proceeding, that doesn't preclude a sensor from finding something mitigating the record. Okay, well, under, I don't know if this is the same number now, but 13703G, where you talk about mitigating circumstances, is there anything in 13703G in which Mr. Woods's argument would fit that basically the death penalty is immoral and judge you're better than that? Well, no, it certainly would not fit with any of these statutory mitigating circumstances. Now, whether that's something, obviously the sentencing court didn't think that that was an appropriate reason not to impose the death penalty, that he stated that in giving his reason for sentencing. But the fact that no mitigation evidence is presented, that doesn't mandate a death sentence, given that the court could consider other things to be mitigating potentially. Here, the petitioner asked to amend the petition to add the Eighth Amendment claim. What is your view? Because it seems like the district court  Should the district court have technically allowed the amendment? I mean, ultimately came to the conclusion that it might've been futile, it sounds like, because there was no Eighth Amendment claim, but is there a procedural problem here where the district court didn't actually allow the amendment or provide better reasoning for why he didn't allow the amendment? I don't think that there is, at least with this specific claim, because ultimately, whether the district court did what it did here, which is deny amendment under grounds of futility after doing what's essentially a full merits review of the claim, or whether the court had allowed amendment and then reviewed the claim that way. I think we get to the same place either way. This is really a legal claim, a legal issue that didn't require factual development or anything of that nature. So the procedural way in which the court looked at it didn't preclude any factual development or that kind of a thing. So I think given that it was the same analysis that the court would have done had it allowed amendment, I don't think there's any problem with the court. I mean, is that a suggestion that we should just accept that the district court, as a matter of practicality, did allow the amendment and then rejected it? Part of it is based on, and I don't think I got a clear answer to this in the briefing, is the threshold for amending a petition for habeas relief the same as it would be in the civil context, meaning if it's futile, then you just don't allow the amendment. I mean, is that how we should, should we look at it under that rubric? Or should we say, no, there was really, there were some procedural hoops that the district court needed to jump through here and didn't properly do? I'm not sure, you know, what the answer would be for every case or every type of issue. I think though that for this particular issue, in this case, I don't see a problem with the district court denying amendment based on futility after looking at the claim and concluding that it has no chance of succeeding on the merits. Again, there may be situations where there are requests for evidentiary development or that kind of a thing, which may merit treating that amendment futility issue differently. But here, I don't think there's a, there's a strong reason to do that. Council, I mean, the state has argued on the merits that amendment was futile because on the merits, there's no claim, the petition argued the absolute reverse. You've both briefed it. The state, I take it, would not object to our reaching the merits of whether there actually is a substantive claim or not, right? Not at all, no. No, we would not object to that. If I can address for a moment the issue of the related due process claim. If I understand that claim correctly, I believe it to be based on Sanders v. Brown. First, I would argue that Sanders is not clearly established federal law for this case. It was decided after the state court did the review. While it came out, while that decision was pending review by the Arizona Supreme Court, the Arizona Supreme Court denied review. It did not issue a substantive decision. And as this court has stated in cases like Barker v. Fleming, the clearly established federal law are the decisions that exist at the time of the last recent state court decision. That aside, even if Sanders were applicable here, it doesn't change the results. I understand Sanders is addressing the line of cases. You have Stringer v. Black, and then you have Zant v. Stevens, kind of similar but parallel lines of cases talking about when is there error based on a sentence being based on an invalid aggravating factor, and the previous case law had differentiated between weighing states and non-weighing states. Sanders was the court's attempt to kind of simplify that analysis as far as, okay, when can we say an error in the sentencing has occurred? But nothing about that decision purports to overrule the well-established line of cases saying that when there is an error in sentencing based on an invalid aggravating factor, a court can essentially cure that error by conducting a re-weighing of the aggravation and mitigation as occurred here, or a harmless error review. So even if Sanders were applicable, because that case discusses when an error in sentencing occurs, it doesn't, it isn't really germane to the issue here, which was a re-weighing after the state court admitted or assumed that there would be an error if the Illinois convictions were vacated. So even if the due process claim is properly before the court, I don't think that it in any way changes the analysis or the reasonableness of the state PCR court's decision. Council, remind me, what was the state's position in its brief as to whether the due process claim was exhausted or not? Your Honor, I do not believe it's differentiated in between the eighth amendment and due process claim and essentially addressed it as a single issue, which for the reasons that, you know, in discussing Sanders, I don't think that if there is a due process claim before the court, I don't think that it changes the analysis in any way. Okay, but the state did not argue in its brief that the claim was unexhausted, the due process portion of the claim? No, no, I don't think so. Thank you. Thank you, Your Honor. I can, unless the court has any additional- You have time remaining. Do you want to get to the Brady issues? Yes, thank you. That's where I was going to move to now. First, about the standard. The Arizona Supreme Court correctly identified the applicable standard from Supreme Court case law, which here was United States v. Augers, which lists three different materiality standards depending on the circumstances here, where the type of information had been specifically requested by the defense and not disclosed. The standard, as correctly identified by the Arizona Supreme Court, was whether disclosure might have made a difference in the outcome. The court referenced that standard several times. So there's no question that the court identified and applied the correct standard from Supreme Court case law. And its decision under that was reasonable under the circumstances as kind of the discussion with Mr. Phelan touched on. There were essentially two overlapping bases for the state court's decision. First, that the financial benefits to Arnold Merrill were cumulative of a host of other impeaching evidence that was in front of the jury. And in addition to that, the fact that his testimony, while important to the case, was not pivotal. And in fact, the Arizona Supreme Court specifically referenced the Lucazette case to differentiate the importance of Merrill's testimony in that case versus this case, in coming to its conclusion that there's no chance that the undisclosed impeachment would have made a difference here, given the role of his testimony in this case versus that other one. Well, but help me out with that, because what about the argument that where the payments to Merrill were ultimately admitted in the Lutzwick case, there was an acquittal. How does that weigh in to, I mean, why isn't that some evidence that it might have made a difference in the outcome of the case? It's not, for the reason that the Arizona Supreme Court addressed in differentiating the two cases, as it noted in the Lucazette case, there was no direct evidence tying that defendant to the conspiracy at all. So Merrill's testimony under those circumstances became very important. Here in contrast, I mean, first, and the most important and key to the case here as the state court identified was Mrs. Redmond's eyewitness testimony, identifying Hooper as one of the three men who committed the murders. As the court referenced on top of that, there were also multiple other witnesses who testified to Hooper's involvement with- So it's the other evidence, it's the other evidence, including, as we discussed previously, Mrs. Redmond, that make Hooper's case different in that respect. That's right. That's right. And then as far as the finding that this impeachment was cumulative, that was a reasonable conclusion because as was discussed with Mr. Phelan, the jury was well aware that Merrill received a substantial benefit for his testimony as the court had noted in immunity and the death penalty coming off the table. I can't think of a greater benefit to a witness and more information that's more important to a jury's determination of a witness's credibility than knowing that this witness was potentially facing the death penalty and because they decided to cooperate with the state and provide testimony in the case at issue, that's no longer on the table. What about the idea, what about this idea though, that there's something quantitatively different about money? That it just seems to be more corrupt because the prosecution, they have prosecutorial discretion. I mean, Merrill had a different role to play here so even though the death penalty was technically on the table, maybe it never really was on the table, there's this prosecutorial discretion which is fair to put on the table but when you're talking about just payments of money, it's just different quantitatively and we just need to read it in a separate category. How do you respond to that? Yeah, I don't necessarily disagree that, depending on the circumstances, financial payments to a witness may have some kind of difference, influence the jury's decision making in a different way. I guess it would be one way to say it but ultimately, this is an EBBA case and reasonableness of the application standard, that's an issue here. The Supreme Court has never held that failure to disclose a financial benefit is always material or is always prejudicial in a Brady claim. If that were the case, the issue here would be much different. That's not the case. I think financial benefits is always going to be reviewed, especially in the EBBA context, in the context of the entire record which is what the Arizona Supreme Court did here and I think under all of the circumstances. Let's take the Lutzwood case and say that the same thing had happened where there wasn't a disclosure of the financial benefit until afterwards and say he had been convicted. Would the state's position be different in that case that it would have been more prejudicial in the Lutzwood facts because you wouldn't have had this other direct evidence and so therefore, Merrill would have been more important and therefore, it would have been more material that this evidence was left out or would you still be saying, hey, we all knew that Merrill was getting all these other benefits so it doesn't matter. Therefore, it's just a cumulative benefit that he was receiving. I think regardless, it remains the situation that it still is ultimately a cumulative benefit and that's just because of the facts and circumstances of this case and the impeachment evidence that was in front of the jury here. Well, no, but I'm saying in the Lutzwood case, presumably, you have the same impeachment evidence but you just don't have, you don't have Mrs. Redmond, you don't have Campanoli, you don't have Louie, you don't have some of this other evidence coming in that was rather more overwhelming in the Hooper case. Would the state's position be different? Okay, I'm sorry, I understand the question now. No, I don't think it would change our position on the conclusion that it was cumulative impeachment. It does, it would change our position, I would think, on the other piece of the court's finding that his testimony itself was not pivotal, therefore, this isn't material. So, I mean, ultimately, everything boils down to the cumulative analysis because, I mean, here, Merrill has less importance so that's a factor. But ultimately, the state's position is it's cumulative regardless and that's really where the court needs to focus. Well, I think it's hard for me to separate those two pieces out, the cumulative nature and the non-pivotal nature of his testimony. You know, I suppose you could look at it in that additional impeachment is not as important in context because his testimony wasn't as pivotal in this case. I'm not sure that that is the way the Arizona Supreme Court viewed it. It seemed to look at these as kind of two separate reasons for concluding that information wasn't material. But, I mean, ultimately, yeah, I guess I would agree that it does depend on all of the facts and circumstances of the case and part of that, which is different from Lukaszek, is the existence of other evidence of guilt. And as far as the photographs and the booking records, there's nothing in the record. And Mr. Valen said, we'd have to speculate on how the defense could have used it. Well, speculation isn't enough to establish a Brady violation. So I think right there is enough reason to find that the Arizona Supreme Court reasonably concluded that because this information was at least available to the defense at the time of the trial, there's no Brady violation. And if the court doesn't have any further questions, I would rest on a brief for any of the remaining issues. It doesn't appear that we do. Thank you very much, counsel, for your argument today. Let's put three minutes on the clock for Mr. Valen to do a rebuttal. Mr. Valen. Thank you, Judge. As to Bagley being clearly established federal law, I refer the court to Holland v. Florida, 560 U.S. 631. A state case becomes final under denial of cert if no cert is filed 90 days thereafter. Therefore, Bagley is clearly established federal law for purposes of this case. I want the court, please, to examine the nature of the hearing that took place in front of Judge Patterson when the information of payments came out. That hearing was characterized by repeated lies from Ryan and Merrill, minimization from Ryan and Merrill, and they were only brought to heel on their denials of the quantity and timing of the payments by documents that were presented to them and they were confronted with. Our point is, had the jury seen this kind of effort made by the state to not only suppress it to begin with, but then when caught, to simulate, minimize, and deny, and effectively commit perjury and caught out by documents. This was a close case. The jury was out for three days. Judge Woods testified at the hearing at which this information was dragged out of the witnesses to the fact that one of the jurors had told him, I won't vote guilty in this case no matter how long I stay here. This was a close case, a little bit of evidence of the most tawdry kind denied by the payor and payee, I think would have made a substantial difference. The problem with the district court's disposition of the Pryor's claim is that its insistence that what took place in the PCR court amounted to reweighing simply cannot be found in the text, the brief text of the PCR court's order. Respondents to this day insist that what happened was a reweighing. And they do that because if it's viewed as a harmless error analysis, it really fails because what it looks like is an automatic affirmance which has been rejected by Clemens and Johnson. The question of whether, oh, on ineffective assistance to counsel, I refer the court to the Carell versus Ryan case, which discusses trial counsel who did no mitigation investigation, disparaged it by calling it Mickey Mouse, so much smoke, just like Woods did. And I want to emphasize that Woods' strategy of trying to talk the judge out of imposing death is, as Judge Bennett said, not provided for in the Arizona statute. That is not a reasonable and statutorily provided means of obtaining a life sentence. There is one way to obtain a life sentence in Arizona. If the mitigation that has been mustered and presented to the jury or judge is sufficiently substantial to outweigh the aggravation, that's the only way. So his strategy was wrong as a matter of law because he'd never done a capital sentencing in his life. He didn't know how the statute worked. All right, you're over time, counsel? Yes, ma'am. I appreciate your argument very much, both sides, actually. We'll conclude it here, and I'll order the case submitted for a decision to be issued by this court in due course. Thank you very much for participating today. Thank you.
judges: Nguyen, Bennett, Nelson